UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REVERSE NOW VII, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>OREGON MUTUAL INSURANCE COMPANY,<br><br>                Defendant. | CASE NO. C16-209-MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment. (Dkt. No. 22.) Having reviewed the Motion, the Response (Dkt. No. 31), the Reply (Dkt. No. 35) and all related papers, the Court GRANTS in part and DENIES in part. The Court declines to hear oral argument on this matter.

**Background**

Plaintiff Reverse Now VII, LLC brings this action against Defendant Oregon Mutual Insurance Company ("Oregon Mutual"). Plaintiff is the owner of an apartment complex in Seattle, Washington that was insured by Oregon Mutual. (Dkt. No. 41.)

On February 2, 2014, the apartment complex was damaged by fire. (Dkt. No. 23, Ex. D; see also Dkt. No. 32, Ex. 9 at 3.) Relevant to this dispute is damage to portions of the apartment's exterior marbleCrete. MarbleCrete is a cement, stucco-type overlay made with crushed marble, and often used in exterior surfacing.[1] (Dkt. No. 22 at 3; Dkt. No. 31 at 1.) While it is possible in some cases to "match" the color and texture of replacement marbleCrete with that of existing marbleCrete, this process, as well as the "tie in" process, was apparently complicated by the age and condition of the apartment's existing surfacing. (See Dkt. No. 32, Ex. 8.) Accordingly, although only a portion of the west elevation was damaged by the fire, Plaintiff sought to have the entire building – and at a minimum, the entire west elevation – reclad. (Dkt. No. 32, Ex. 9 at 3-4.)

After receiving notice of the claim on February 3, 2014, Oregon Mutual accepted coverage and assigned internal adjuster James Rumppe and independent adjuster John Colvard to investigate the scope of repairs and adjust loss. (Dkt. No. 22 at 3; see also Dkt. No. 24, Exs. 2, 7.)

On March 4, 2014, Oregon Mutual paid Plaintiff $65,352.74, an amount representing the estimated value of repairs.[2] (Dkt. No. 22 at 4; Dkt. No. 24, Ex. 12.) Plaintiff expressed concerns

---

[1] MarbleCrete is applied in the following way: A water-resistant barrier ("WRB") is applied to the exterior wall to seal against water intrusion. Next, a wire layer is nailed over the WRB. Next, several layers of stucco are applied. Finally, rock chips are blasted into the outermost layer of stucco. Sections of marbleCrete may be separated by "control joints," which are metal seams installed on top of the wire layer for spacing and structural purposes. The process of joining existing and replacement marbleCrete is called "tie in." (Dkt. No. 23 at 37-38.)

[2] This amount represented the actual cash value ("ACV") of agreed-upon repairs minus the deductible. (Dkt. No. 22 at 4.) Under Plaintiff's policy, the replacement cost value ("RCV") payments were not to be paid until repairs were performed. (Id.)

about the estimate, and in particular, whether it would cover the cost of matching the replacement and existing marbleCrete. (Dkt. No. 24, Ex. 7.)

On March 26, 2014, Plaintiff retained insurance adjuster Paul Moreland to represent it in its claim. (Dkt. No. 24, Ex. 14.) After conferring with Mr. Moreland, Mr. Colvard requested additional estimates from three marbleCrete subcontractors. (Id., Ex. 18.) Each advised Mr. Colvard that matching was "not feasible." (Id.) According to Mr. Colvard's report to Oregon Mutual, the subcontractors agreed it would not be possible to "effectively replace[] just a portion of the west elevation with no breaking points of control joints or separated corners," and at a minimum, they would need to repair "the north/south elevations to the vertical control joints on those elevations." (Id., Ex. 19.) Further, they agreed they could not "guarantee a color match on the north and south elevations." (Id.)

On August 6, 2014, Mr. Rumppe provided an internal report to Oregon Mutual's claim manager. (Dkt. No. 32, Ex. 9.) The internal report included the following note regarding repairs to the marbleCrete:

> A partial repair of the west elevation does not appear to be a viable option; so at a minimum [best case scenario] the stucco repairs will cost at least $387,750.63 if we do the full elevation. It's likely that we will get pulled into the west, and north/south elevations [which will take us around the ends of the building and stop at a vertical control joint at covered area]. If so, the stucco repairs will total $542,925.43 [this is not best case scenario but would represent a good compromise].

(Id. at 4-5.)

Mr. Rumppe's report noted that coverage for matching is "traditionally a difficult issue to fight." (Id. at 4.) In particular:

> If the marblecrete is in its natural finish most carriers have typically agreed to elevation replacement but if [it] has been painted they will not replace. In this instance, all of the marblecrete is in its natural finish. Accordingly, it's going to be a tough fight on the aesthetics.

(Id.)

Finally, Mr. Rumppe reported that Mr. Moreland had agreed to a test repair, the outcome of which would determine the amount of Oregon Mutual's ACV payment for the marbleCrete. (Id. at 6.)

Oregon Mutual claims that, despite several attempts, it was unable to contact Plaintiff or Mr. Moreland for approximately one year.[3] (Dkt. No. 22 at 5.) In March 2015, Oregon Mutual sent Plaintiff and Mr. Moreland correspondence asking if they disputed the ACV calculation and stating that if no response was received by April 2015, it would conclude there was no ongoing dispute. (Dkt. No. 22 at 6; Dkt. No. 24, Exs. 4, 16.) In May 2015, having received no response, Oregon Mutual closed the claim. (Dkt. No. 22 at 6; Dkt. No. 24, Ex. 6.)

On November 6, 2015, Mr. Moreland reported to Mr. Colvard the results of a test repair. Mr. Moreland reported that the subcontractor had been unable to match the color, size, and texture of the existing marbleCrete, and that the WRB under the marbleCrete was not in a condition to be tied into a new section. (Dkt. No. 24, Ex. 17.) Mr. Moreland explained that, due to concerns about the tie in, the subcontractor refused to warranty the replacement marbleCrete. (Id.) Further, Mr. Moreland explained that a marbleCrete product representative stated "it would be unwise to try and tie into the existing system." (Id.)

On November 11, 2015, Mr. Rumppe sent Mr. Colvard a report regarding the test repair. (Id., Ex. 25.) The report noted that the test repair appeared "brighter/whiter than the surrounding material," and that "[t]he pebble grain and color does not quite match." (Id.)

---

[3] The record reveals that Mr. Moreland contacted Oregon Mutual on February 2, 2015 to advise that repairs were on hold because Plaintiff's principal was out of the country seeking treatment for his wife's cancer. (Dkt. No. 24 at 252.) Mr. Moreland acknowledged the delay, and also explained that Plaintiff intended to wait to perform exterior repairs until the weather improved. (Id.)

1     On December 3, 2015, Mr. Colvard reported to Oregon Mutual that he had contacted the
2 subcontractor who performed the test repair and learned that Plaintiff had instructed him not to
3 attempt to match the color. (Id., Ex. 26.) The subcontractor told Mr. Colvard he thought he
4 could have matched the color, but not the texture, of the existing marbleCrete. (Id.)

     On December 14, 2015, Mr. Moreland notified Mr. Colvard of Plaintiff's intent to enter
the appraisal process. (Id., Ex. 27.) In the same correspondence, Mr. Moreland stated that
"Oregon Mutual is in violation of the Washington Administrative Code," including WAC 284-30-330(3), (6), (7), (8), and (18); WAC 284-30-370; and WAC 284-30-380(4) and (7).[4] (Id.)
Further, Mr. Moreland noted that Plaintiff "will be forced to take action under RCW 48.30.015"
if Oregon Mutual failed to cure these alleged violations. (Id.) The following day, Mr. Moreland
sent a letter to the Washington State Office of the Insurance Commissioner ("OIC") identifying
the same WAC sections and also threatening action under RCW 48.30.015. (Dkt. No. 32, Ex. 14.)

     On February 11, 2016, as the appraisal was pending, Plaintiff filed this suit. (See Dkt. No. 1.) Plaintiff alleged that Oregon Mutual failed to provide the full amount of damages due under the policy, and asserted claims for: (1) breach of contract for violation of good faith and fair dealing; and (2) violations of the Insurance Fair Conduct Act ("IFCA"). (Id.) The IFCA claim is based in part upon the WAC violations identified by Mr. Moreland in his correspondence to Mr. Colvard and the OIC. (Id. at 3-5.)[5]

---

[4] The letter was apparently sent via both mail and fax. While it is dated December 14, 2015, it bears a December 16, 2015 fax transmission stamp. (See Dkt. No. 24 at 275-277.) In either case, it was certainly received more than twenty days before the filing of this action.

[5] After completing the appraisal process, and after Oregon Mutual filed its Motion for Summary Judgment, Plaintiff filed an amended complaint asserting claims for fraud in the appraisal

1  Oregon Mutual now moves for summary judgment as to each of these claims.  (Dkt. No. 22.)

**Discussion**

I. **Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986).  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

II. **Insurance Fair Conduct Act**

The IFCA provides a cause of action to a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits."  RCW 48.30 et seq.  Oregon Mutual contends that summary judgment is appropriate because Plaintiff failed to (1) comply with the statute's notice requirement or (2) show an "unreasonable denial" of coverage.  (Dkt. No. 22 at 11-14.)

a. **Notice**

The IFCA requires that, twenty days prior to filing an action, a claimant "provide written notice of the basis for the cause of action to the insurer and office of the insurance

---

process and violation of Washington's Consumer Protection Act.  (See Dkt. No. 41.)  Those claims, and the parties' related allegations concerning the appraisal, are not presently at issue.

1 | commissioner." RCW 48.30.015(8)(a). Pre-suit notice "is a mandatory condition precedent to
2 | an IFCA lawsuit." MKB Constructors v. Am. Zurich Ins. Co., 49 F. Supp. 3d 814, 839 (W.D.
3 | Wash. 2014).

The Court finds that Oregon Mutual provided adequate notice under the IFCA. More than twenty days before Plaintiff filed this action, Mr. Moreland faxed and mailed to Mr. Colvard correspondence identifying specific provisions of the WAC it contends were violated, including a brief explanation of the alleged violations. (Dkt. No. 31 at 3; Dkt. No. 24, Ex. 27.) Oregon Mutual acknowledged receipt of the correspondence, and noted its disagreement with the claims therein. (See Dkt. No. 24, Ex. 28) ("Oregon Mutual disagrees with your allegations and contentions regarding its adjustment and investigation into this loss. Oregon Mutual also notes for its file that your letter of December 16, 2015, has threatened litigation.").[6]

While Oregon Mutual complains that the correspondence it received was not "the same" as the correspondence sent to the OIC (Dkt. No. 35 at 4) nowhere does the IFCA require that these notices be identical. See RCW 48.30.015(8)(a). The notices identify the same alleged violations, and both provide "notice of the basis for the cause of action" as required. (Compare Dkt. No. 24, Ex. 27 with Dkt. No. 32, Ex. 14.)

### b. Unreasonable Denial

An insurer may violate the IFCA by refusing to pay benefits, or by making an unreasonably low offer. See Kovarik v. State Farm Mutual Auto. Ins. Co., Case No. 15-1058TSZ, 2016 WL 4555465, at *2 (W.D. Wash. Aug. 31, 2016); see also Morella v. Safeco Ins.

---

[6] While the record does not reveal whether a copy of the notice was ever sent directly to Oregon Mutual, Oregon Mutual appears to concede that it was. (See Dkt. No. 35 at 4 (referring to "[t]he December 14, 2015 correspondence from [Mr. Moreland] to Oregon Mutual.").) Because the parties do not raise this issue, the Court does not address it here.

Co. of Ill., Case No. 12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013) ("Where the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts . . . and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied."). The reasonableness of an insurer's conduct turns on what it "knew and/or should have known at the time the offer was made." Kovarik, 2016 WL 4555465, at *3.

While Oregon Mutual contends that there can be no unreasonable denial because it has paid "all amounts due and owing under the policy" (Dkt. No. 22 at 13-14), whether it acted reasonably prior to and during the appraisal process is a question of fact for the jury. Prior to the appraisal, Oregon Mutual had ample knowledge that matching the marbleCrete would be difficult if not impossible, that most insurers cover elevation replacement, and that refusing to do so would lead to "a tough fight on the aesthetics." (Dkt. No. 32, Ex. 9 at 4.) Mr. Colvard's report reveals that as of April 2014, each of the subcontractors Oregon Mutual contacted "advised matching the tan colored marblecrete on this building is not feasible." (Dkt. No. 24, Ex. 18.) During the appraisal, Oregon Mutual presented testimony by a contractor who stated he could match the replacement marbleCrete. (Dkt. No. 27 at 5.) The contractor offered photographs purporting to show successful matching under similar conditions. (Id.) After the appraisal was complete, Plaintiff claims it learned the contractor's testimony had been false. (Id. at 6.) While Plaintiff's claims regarding the appraisal are not at issue here, a reasonable jury could find that, given what it knew about the difficulty of matching, Oregon Mutual's conduct before and during the appraisal was unreasonable.

The Court DENIES the Motion with respect to the IFCA.

## III. Bad Faith

An insurer has a duty of good faith to all its policyholders, and violation of that duty may give rise to an action for bad faith. Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484 (2003) (en banc) (citation omitted). To establish bad faith, Plaintiff must show that Oregon Mutual's breach of the insurance contract was "unreasonable, frivolous, or unfounded." Id. (citation omitted). Whether an insurer acted in bad faith is a question of fact, and an insurer is only entitled to summary judgment if "there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances." Id. (citing Indus. Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wn.2d 907, 920 (1990) (en banc)). As with the IFCA claims, whether Oregon Mutual's conduct and offer for payment were unreasonable and made in bad faith are questions of fact properly reserved for a jury.

The Court DENIES the Motion with respect to the bad faith claim.

## IV. WAC

While the IFCA does not create an independent cause of action for an insurer's regulatory violations, a violation of WAC 284-30-330 is "a per se unfair trade practice" that in turn constitutes a violation of the IFCA. See Perez-Cristanos v. State Farm Fire & Cas. Co., 187 Wn.2d 669, 680-85 (2017); see also Bauman v. Am. Commerce Ins. Co., Case No. C15-1909BJR, 2017 WL 635777, at *1 (W.D. Wash. Feb. 16, 2017). The Court considers each of the alleged regulatory violations in turn:

### a. WAC 284-30-330(3) and WAC 284-30-370

WAC 284-30-330(3) provides that it is an unfair practice for an insurer to "fail[] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies." WAC 284-330-370 provides that "[e]very insurer must complete its investigation of a claim within thirty days after notification of the claim, unless the investigation

cannot reasonably be completed within that time. All persons involved in the investigation of a claim must provide reasonable assistance to the insurer in order to facilitate compliance with this provision." Plaintiff has not offered evidence either that Oregon Mutual failed to implement reasonable standards for prompt investigation or that Plaintiff provided the "reasonable assistance" needed to complete the investigation within thirty days. Oregon Mutual began its investigation of the claim promptly, and provided an initial ACV calculation within 30 days of the fire. (See Dkt. No. 24 at 15, 28-32, 143-144.) While Oregon Mutual did not complete its investigation within 30 days, the record reveals that the investigation could not reasonably have been completed in this time. Further, at least part of the delay between reporting and resolution was due to Plaintiff's own failure to schedule a test repair or respond to Oregon Mutual's correspondence. (See Dkt. No. 24, Exs. 16, 20-23.)

The Court GRANTS the Motion with respect to WAC 284-30-330(3) and WAC 284-30-370.

### b. WAC 284-30-330(7) and (18)

WAC 284-330(7) provides that it is an unfair practice for an insurer to compel a claimant "to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." WAC 284-330(18) provides that it is an unfair practice for an insurer to "fail[] to make a good faith effort to settle a claim before exercising a contract right to an appraisal." Plaintiff contends that by offering an unreasonably low amount, Oregon Mutual effectively compelled it to participate in the appraisal. The parties dispute the precise amount that Oregon Mutual had paid prior to the appraisal. Oregon Mutual claims it had paid $248,917.67 for exterior repairs (Dkt. No. 35 at 8), while Plaintiff claimed it had paid only $214,927.97 (Dkt. No. 23, Ex. D at 41). The appraisal panel awarded Plaintiff $437,461.90.

(Dkt. No. 22 at Ex. 3.) The difference between these amounts – at a minimum, $188,544.30 – is not insubstantial. A reasonable jury could find that Oregon Mutual's offer for payment was unreasonable and made in bad faith, and that by offering such an amount, Oregon Mutual effectively compelled Plaintiff to initiate an appraisal.

The Court DENIES the Motion with respect to WAC 284-30-330(7) and (18).

### c. WAC 284-30-330(6)

WAC 284-30-330(6) provides that it is an unfair practice for an insurer to "not attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Oregon Mutual contends that WAC 284-30-330(6) does not apply because "the coverage at issue is property coverage and not liability coverage." However, this Court has regularly interpreted this provision in the context of property insurance claims. See, e.g., Navigators Ins. Co. v. Nat'l Union Fire Ins. Co., Case No. C12-13MJP, 2013 WL 4008826, at *9 (W.D. Wash. Aug. 5, 2013); Taladay v. Metro. Grp. Prop. and Cas. Ins. Co., Case No. C14-1290JPD, 2016 WL 541398, at *5-6 (W.D. Wash. Feb. 11, 2016). A reasonable jury could find that Oregon Mutual's offer for payment was unreasonable and made in bad faith.

The Court DENIES the Motion with respect to WAC 284-30-330(6).

### d. WAC 284-30-330(8)

WAC 284-30-330(6) provides that it is an unfair practice for an insurer to "attempt[] to settle a claim for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." Plaintiff does not claim that it was misled in any way by "written or printed advertising material accompanying or made part of an application," or even that such material exists.

The Court GRANTS the Motion with respect to WAC 284-30-330(8).

     **e. WAC 284-30-380(4)**

Plaintiff has withdrawn its claim that Oregon Mutual violated WAC 284-30-380(4). (Dkt. No. 31 at 10.)

The Court GRANTS the Motion with respect to WAC 284-30-380(4).

     **a. WAC 284-30-380(7)**

WAC 284-30-380(7) provides that "[i]nsurers are responsible for the accuracy of evaluations to determine actual cash value." Plaintiff contends that Oregon Mutual's "internal notes indicate matching is covered, yet Defendant fails to pay for it." (Dkt. No. 31 at 10.) However, Plaintiff has not identified any inaccuracies in Oregon Mutual's evaluation or its ACV calculation. (Id.)

The Court GRANTS the Motion with respect to WAC 284-30-380(7).

## Conclusion

The Court GRANTS Defendant's Motion for Summary Judgment with respect to alleged violations of WAC 284-30-330(3) and (8), WAC 284-30-370, and WAC 284-30-380(4) and (7). The Court DENIES Defendant's Motion for Summary Judgment with respect to alleged violations of the IFCA, bad faith, and violations of WAC 284-30-330(6), (7) and (18). The case will proceed to trial on each of these remaining claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 30, 2018.

                                                  _____
                                                  Marsha J. Pechman
                                                  United States District Judge