# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| REVERSE NOW VII, LLC,<br><br>Plaintiff,<br><br>v.<br><br>OREGON MUTUAL INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C16-209-MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 84) and Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 86). Having reviewed the Motions, the Responses (Dkt. Nos. 88, 93), the Replies (Dkt. Nos. 96, 97) and all related papers, the Court GRANTS Defendants' Motion and DENIES Plaintiffs' Motion. The Court declines to hear oral argument on the matter.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

**Background**

This case arises out of an insurance claim filed by Plaintiff Reverse Now VII, LLC ("Reverse Now") with its insurer, Defendant Oregon Mutual Insurance Company ("Oregon Mutual") regarding the extent of coverage provided under its insurance policy (the "Policy").

The Court and the parties are familiar with the facts of this case, which have been set forth in detail in the parties' briefing on these and other motions and in previous orders of this Court. (See, e.g., Dkt. Nos. 40, 43, 73, 95.) Accordingly, the Court repeats only those facts relevant to its resolution of the present motions:

**I.   Reverse Now Retains HMA and Mr. Moreland**

In February 2014, an apartment complex owned by Reverse Now and insured by Oregon Mutual was damaged by fire. (See Dkt. No. 1.) Oregon Mutual accepted coverage and retained independent adjuster John Colvard to investigate the scope of repairs and adjust the loss. (See Dkt. No. 24, Exs. 2, 7.)

In March 2014, Reverse Now retained public adjusters HMA Loss Consultants, Inc. ("HMA") and Paul Moreland to represent it in its insurance claim. (Id., Ex. 14.) Oregon Mutual and Mr. Colvard were instructed to direct all further correspondence regarding the claim to HMA. (Id.) Over the following months, Mr. Colvard and Mr. Moreland communicated concerning repairs to the apartment, and in particular, whether the exterior siding could be repaired or whether it required complete replacement. (Id., Exs. 17, 18.)

**II.  Mr. Moreland Selects Mr. Gower as an Impartial Appraiser**

In December 2015, Mr. Moreland informed Mr. Colvard that Reverse Now intended to enter the appraisal process provided under the Policy. (Id., Ex. 27.) The Policy provided that "each party will select a competent and impartial appraiser." (Id., Ex. 13 at 15.) Reverse Now

selected Randy Gower as its impartial appraiser. (Id., Ex. 27.) Oregon Mutual selected Gary Halpin as its impartial appraiser. (Id., Ex. 28.) The appraisal process concluded in February 2017, with the panel finding that Oregon Mutual owed an additional $188,544.23 for repairs. (Id., Exs. 3, 4.) Oregon Mutual paid the balance shortly thereafter. (Id., Ex. 1.)

In July 2016, as the appraisal was ongoing, Reverse Now filed this action against Oregon Mutual asserting claims for breach of contract; bad faith; and violations of the Insurance Fair Conduct Act ("IFCA") and the Washington Administrative Code. (Dkt. No. 1.) In December 2017, Reverse Now amended its complaint to include claims for fraud in the appraisal process and violation of the Consumer Protection Act ("CPA"). (Dkt. No. 41.)

### III. Mr. Moreland's Alleged Misrepresentation and Concealment

In April 2018, Oregon Mutual learned that Mr. Moreland was not licensed as a public adjuster in the State of Washington during his representation of Reverse Now. (See Dkt. No. 54.) While Mr. Moreland apparently applied for a license with the Washington Office of the Insurance Commissioner ("OIC") in June 2014, it was not issued due to his failure to supply a bond. (See Dkt. No. 55, Ex. A.) Mr. Moreland did not receive a valid license until November 2016. (Dkt. No. 85, Ex. J.) Nevertheless, Mr. Moreland held himself out as a public adjuster and performed the responsibilities of a public adjuster on behalf of Reverse Now for more than two and a half years in violation of RCW 48.17.060. (See, e.g., Dkt. No. 32, Exs. 4, 5, 7, 13.) A knowing violation of RCW 48.17.060 constitutes a Class B felony. RCW 48.17.063.

Oregon Mutual also learned that Mr. Gower was not impartial, but instead had been "best friends" with Mr. Moreland for decades, that Mr. Gower and Mr. Moreland were former business partners, and that they often "worked the same claims together." (Dkt. No. 55, Ex. B at 8:20-12:21, 35:10-36:7.)

1   These facts were never disclosed by Reverse Now or Mr. Moreland, but were instead discovered by Oregon Mutual in its review of deposition transcripts in <u>Autumn Ridge West Ltd. LLP v. State Farm Fire & Cas. Co.</u>, No. 15-313SAB (E.D. Wash.), an unrelated case in which Mr. Moreland and Mr. Gower testified. (<u>See</u> Dkt. No. 71 at ¶ 3; Dkt. No. 55, Exs. A, B, C.) Unlike other cases in which he served as an expert witness, <u>Autumn Ridge</u> was not disclosed in Mr. Moreland's expert report. (<u>See</u> Dkt. No. 88 at 6, 11; <u>see also</u> Dkt. No. 49, Ex. 1; Dkt. No. 71, Ex. 1.) Nor was <u>Creel et al. v. State Farm Fire & Cas. Co.</u>, No. 16-400RMP (E.D. Wash. 2017), another case in which Mr. Moreland's lack of a valid public adjusters' license was raised in a deposition. (<u>Id.</u>)

In May 2018, the Court granted Oregon Mutual leave to amend its answer to include affirmative defenses of misrepresentation and concealment, which it contends voided the Policy. (Dkt. Nos. 73, 76.)

Oregon Mutual now moves for summary judgment as to these and other affirmative defenses. Reverse Now separately moves for summary judgment as to its breach of contract, bad faith, IFCA, and CPA claims.

**Discussion**

I.  **Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. <u>Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 253 (1986).  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

## II. Oregon Mutual's Motion for Summary Judgment

### A. Misrepresentation and Concealment

In the interests of discouraging insurance fraud, courts in this state have long upheld policy provisions stating that misrepresentation, concealment, or fraud in the claims process will void coverage.  See, e.g., Mut. of Enumclaw Ins. Co. v. Cox, 110 Wn.2d 643, 649 (1988); Wickswat v. Safeco Ins. Co., 78 Wn. App. 958, 970 (1995); Ki Sin Kim v. Allstate Ins. Co., Inc., 153 Wn. App. 339, 355 (2009).  Courts will enforce such provisions "regardless of whether the misstatements prejudiced the insurance company," and "[a]n insured need only make one material misrepresentation to void all coverage under the entire policy."  Kim, 153 Wn. App. at 354 (citing Onyon v. Trucks Ins. Exch., 859 F. Supp. 1338, 1341 (W.D. Wash. 1994)).

"A misrepresentation is material if it involves a fact that is relevant to the claim or the investigation of a claim."  Onyon, 859 F. Supp. at 1341.  While materiality is "generally a mixed question of law and fact," it may be decided as a matter of law "if reasonable minds could not differ on the question."  Id. (citation omitted).

In addition to proving materiality, the insurer must demonstrate that the insured knowingly made the misrepresentation.  Kay v. Occidental Life Ins. Co., 28 Wn.2d 300, 301 (1947) (citation omitted).  Where an insured knowingly makes a false or misleading statement, courts will presume that the insured intended to deceive the insurance company, and the burden shifts to the insured to establish an honest motive or innocent intent.  Id. (citations omitted).

Here, the Policy contains, in relevant part, the following provisions:

*SECTION I – PROPERTY AND SECTION*

*E. Property Loss Conditions*

    *2. Appraisal*

*If we and you disagree on the amount of loss, either party may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. . . .*

*SECTION III – COMMON POLICY CONDITIONS*

    *C. Concealment, Misrepresentation Or Fraud*

*This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured at any time, intentionally conceal or misrepresent a material fact concerning:*

    *1. This policy;*
    *2. The Covered Property;*
    *3. Your interest in the Covered Property; or*
    *4. A claim under this policy.*

(Dkt. No. 24, Ex. 13.)

Oregon Mutual contends that there is no dispute that Reverse Now misrepresented and concealed material facts concerning (1) the extent of loss, and in particular, whether the exterior siding required partial or complete replacement; (2) Mr. Moreland's lack of a valid public adjusters' license; and (3) Mr. Gower's lack of impartiality. Reverse Now disputes the materiality of each of these alleged misrepresentations and disputes whether Mr. Moreland's actions should be imputed to the insured.

The Court concludes that, while disputed questions of fact preclude summary judgment as to any misrepresentation concerning the extent of loss, summary judgment is appropriate as to the other claims as there can be no reasonable dispute that Mr. Moreland materially and

knowingly misrepresented and concealed facts concerning his licensure and his pre-existing relationship with Mr. Gower, and that these misrepresentations can be imputed to Reverse Now.

**(1) Materiality**

The Court concludes that Mr. Moreland's misrepresentations are material to the insurance claim as a matter of law. Mr. Moreland held himself out as a public adjuster while operating without a license for more than two and a half years. During this time, he performed the responsibilities of a public adjuster on behalf of Reverse Now, including investigating its claim, evaluating the scope of repair, initiating the appraisal process and selecting an appraiser, and corresponding with Oregon Mutual.

While Reverse Now contends that Mr. Moreland's failure to maintain a license was merely a "bureaucratic error" that is "irrelevant as a matter of law" (Dkt. No. 88 at 8-9), the Court disagrees. That violation of RCW 48.17.060 constitutes a Class B felony indicates the legislature's intent that public adjusters scrupulously comply with licensure requirements. Mr. Moreland's failure to maintain a license—and his failure to disclose that he was unlicensed—are far from "irrelevant."[1] Oregon Mutual would not have communicated with Mr. Moreland concerning the claim had it known that he was unlicensed, let alone relied upon his statements concerning the extent of repairs required.

---

[1] The Court is not persuaded by Mr. Moreland's claim that he "believed [he] had a valid public adjusters' license with the State of Washington and was complying with the laws of the State of Washington, until approximately October 16, 2016." (Dkt. No. 63 at ¶¶ 10-12.) First, the requirement that a public adjuster pay a bond to maintain a valid license is clearly set forth in the relevant statute. See RCW 48.17.380, RCW 48.17.430(1) ("Prior to the issuance of a license as a public adjuster, the applicant therefor shall file with the commissioner and shall thereafter maintain in force while so licensed a surety bond in favor of the people of the state of Washington . . . in the amount of five thousand dollars."). Second, the OIC repeatedly contacted Mr. Moreland via letter and email concerning his failure to pay the bond. (See Dkt. No. 55, Ex. A.) Even if the Court were to find that Mr. Moreland did not have actual knowledge of his failure to comply with RCW 48.17.060, he undoubtedly had reason to know.

Further, Mr. Moreland failed to disclose his long-term relationship with Mr. Gower, another fact that is undoubtedly material. The Policy requires the appointment of an *impartial* appraiser (Dkt. No. 24, Ex. 13), and there can be no reasonable dispute that Mr. Gower was not impartial. In Autumn Ridge, Mr. Gower testified that he and Mr. Moreland had known each other since the late 1980s, had worked together at several insurance and claims adjustment companies, often "worked the same claims together," were former business partners, and were "best friends." (Dkt. No. 55, Ex. B at 8:20-12:21, 35:10-36:7.) Even assuming that Mr. Gower's relationship with Mr. Moreland did not impact his decision making in the appraisal process (Dkt. No. 88 at 6), its existence manifestly should have been disclosed to Oregon Mutual.[2] See Copper Oaks Master Home Owners Ass'n v. Am. Family Mut. Ins. Co., 2018 WL 3536324, at *12-13 (D. Colo. July 23, 2018) (holding that appraiser's "long friendship and professional association with [the insured's lawyer] and his law firm is also a fact that a reasonable person could consider important in evaluating [the appraiser's] own interest in an appraisal award," such that the insurance company was entitled to disclosure of its full extent).

That Mr. Moreland's misrepresentation and concealment is "relevant to the claim or the investigation of a claim" cannot reasonably be disputed. Onyon, 859 F. Supp. at 1341. The Court concludes that the materiality requirement is satisfied.

---

[2] While Reverse Now claims that "Oregon Mutual knew or should have known about the preexisting relationship" because it was known to two former employees of the insurance company nearly a decade ago (Dkt. No. 88 at 12, Dkt. No. 63 at 3), the knowledge of these former employees—one of whom is deceased—cannot be imputed to the company. (See Dkt. No. 71, Ex 2.)

**(2) Insured's Knowledge of Misrepresentation and Concealment**

The Court concludes that Mr. Moreland and Reverse Now knowingly misrepresented material information.

As an initial matter, it is undisputed that Vance Kemege, the principal of Reverse Now, had knowledge of Mr. Moreland's failure to maintain a valid public adjusters' license in October 2016, yet failed to disclose this information to Oregon Mutual. (Dkt. No. 62 at ¶¶ 6-8.) Even to the extent that Mr. Kemege believed that such disclosure was not required, the Court finds that Mr. Moreland's knowledge of the misrepresentation and concealment—and his awareness of its materiality—may be imputed to Mr. Kemege.

Reverse Now concedes that Mr. Moreland acted as its agent in the adjustment of the claim, and there can be no dispute that Mr. Moreland's communications—and lack thereof—with Oregon Mutual fell within the scope of that authority. (See Dkt. No. 88 at 10.) Reverse Now retained Mr. Moreland and HMA to represent him in his claim, and HMA's letter to Oregon Mutual specifically instructs that "[a]ll verbal and/or written communication should be directed to HMA." (Dkt. No. 24, Ex. 14.)

It is well-settled that an agent's knowledge is imputed to his principal, and that a principal is liable for fraud or misrepresentations of his agent. See, e.g., Deep Water Brewing, LLC v. Fairway Res., Ltd., 152 Wn. App. 229, 268 (2009) ("Generally, a principal is chargeable with notice of facts known to its agent."); Diaz v. Wash. State Migrant Council, 165 Wn. App. 59, 83 (2011) ("When an agent is aware of a fact at the time of taking authorized action on behalf of a principal and the fact is material to the agent's duties to the principal, notice of the fact is imputed to the principal although the agent learned the fact prior to the agent's relationship with the principal . . .") (citation omitted); see also Restatement (Third) of Agency § 5.03 (2006) ("If

an agent has actual knowledge of a fact, the principal is charged with the legal consequences of having actual knowledge of the fact. If the agent has reason to know a fact, the principal is charged with the legal consequences of having reason to know the fact. . . .").

Whether misrepresentations by a public adjuster are imputed to an insured appears to be a matter of first impression in this district.[3] On the facts of this case, the Court concludes that they are. With respect to his relationship with Mr. Gower, there is no dispute that Mr. Moreland was acting within the scope of his authority when he appointed Mr. Gower as an impartial appraiser. There is no dispute that Mr. Moreland failed to disclose his pre-existing relationship with Mr. Gower to Oregon Mutual. Were Mr. Moreland's misrepresentation not imputable to Reverse Now, the insured could evade the Policy's requirement that it appoint a "competent and impartial appraiser" to the detriment of Oregon Mutual. (Dkt. No. 32, Ex. 13 at 15.) As a matter of public policy, an insured cannot be permitted to adopt a public adjuster's acts when they benefit him, and disclaim them where they do not. See In re ChinaCast Educ. Corp. Sec. Litig., 809 F.3d 471, 476-77 (9th Cir. 2015) (noting that an agent's knowledge is imputed to a principal "when necessary to protect the rights of a third party who dealt with the principal in good faith") (citation omitted); see also Restatement (Third) of Agency § 5.03 (2006) ("By charging a principal with notice of material facts that an agent knows or has reason to know, imputation reduces incentives to deal through agents as a way to avoid the legal consequences of facts that a principal might prefer not to know.").

---

[3] Several other courts have found that a public adjuster's misrepresentations are imputable to the insured. See O'Donnell, Imputation of Fraud and Bad Faith: The Role of the Public Adjuster, Co-Insured and Independent Adjuster, 22 Tort & Ins. L. J. 662, 686 (1987) (collecting cases).

1       Reverse Now contends that such imputation is not appropriate because "[t]o the extent any fraud was committed against [Oregon Mutual], the same fraud was being committed against the insured." (Dkt. No. 88 at 10.) However, "[a] public adjuster . . . will almost never, if ever, be acting adverse to the insured when making misrepresentations." O'Donnell, supra, at 670. While Mr. Moreland arguably was acting in his own interest—and adversely to Reverse Now—in misrepresenting his licensure status (and while Reverse Now may well have a claim against Mr. Moreland in this regard), the same cannot be said with respect to the appointment of Mr. Gower. Mr. Moreland's concealment of his pre-existing relationship with Mr. Gower clearly was not adverse to Reverse Now, as it—at a minimum—presented an opportunity for Reverse Now to reap the benefits of an interested appraiser.

      The Court concludes that the knowledge requirement is satisfied, at least with regard to Mr. Moreland's failure to appoint an impartial appraiser, and GRANTS Oregon Mutual's Motion for Summary Judgment with respect to misrepresentation and concealment.

**III.    Reverse Now's Motion for Partial Summary Judgment**

      Having concluded that the Policy is void as a matter of law, and having granted Oregon Mutual's motion with respect to misrepresentation and concealment, the Court does not reach Reverse Now's breach of contract, IFCA, and WAC claims. While "bad faith and CPA claims may still lie even in the absence of coverage under an insurance policy . . . an insured that perpetrates a fraud upon the insurer is precluded from pursuing either a bad faith or CPA claim." Tudor Ins. Co. v. Hellickson Real Estate, 810 F. Supp. 2d 1211, 1218-19 (W.D. Wash. 2011); see also Kim, 153 Wn. App. at 355 ("When an insured intentionally makes material misrepresentations regarding a claim for insurance coverage, any claim by the insured against the insurance company for bad faith and CPA

violations must fail."); see also Cox, 110 Wn.2d at 652 (observing that the purpose of the CPA would not be served by providing "a windfall to [an insured] guilty of fraud"). Reverse Now's misrepresentation and concealment is dispositive as to both of these claims.

The Court DENIES Reverse Now's Motion for Partial Summary Judgment.

## Conclusion

Having concluded that Reverse Now and Mr. Moreland misrepresented material facts concerning the insurance claim, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 20, 2018.

Marsha J. Pechman
United States District Judge